Case number 20-3671, Western Missouri, United States v. Kenneth McKee, et al. Mr. Casey, I think we hear from you first. Yes, you do, Your Honor. May it please the court, Brian Casey, appearing on behalf of the United States in this matter. And the motion that has led to this appeal before the district court asked a very simple question, and a simple question with a very simple answer. The question was, did the district court have subject matter jurisdiction over this federal criminal case? And the answer was yes. The Constitution creates the power for federal courts to hear federal criminal cases, and in particular, a statute of Congress, 18 U.S.C. 3231, provided the district court jurisdiction to hear this case. That should have been the end of this motion. That should have been all a challenge to court subject matter jurisdiction should have come to. But it didn't. And why we're here is because while the district court clearly has subject matter jurisdiction, it nonetheless dismissed this case. And in doing so, it made a number of errors and a number of conflations that led to why we're here. And so the first thing that the district court did is instead of answering the question that was asked, which I'll call the Article III question, does the district court have the ability to hear this particular case, subject matter jurisdiction? Instead of answering that question, the court instead went to an entirely different question. And now the court said that it was looking at the reach of the statute. But it didn't do that either. I hate to interrupt you so early in your argument, but I am just very confused by the procedural footing of this case. I mean, as a general principle, one doesn't get to quash indictments that may be facially valid on their face. I mean, as a general principle, what happens is the court looks at the indictment, says, does the indictment allege a crime? And if it alleges a crime, then it just goes on, right? And you don't get to invade the grand jury's indictment powers unless you can show some fraud on the part of the grand jury or they have no charge or there is some other impropriety within those grand jury proceedings. And on its face, this indictment looks like an indictment. It alleges a crime. And whether or not you have to prove the existence of admiralty jurisdiction is a question of law that will be ultimately decided. But there's no summary judgment in criminal proceedings. The question is, on its face, does it allege a crime? And I'm looking at this thing and it looks a lot to me like an indictment in a major crimes act case or an assimilative crimes act case where you allege that it occurred in Indian country. It's just an element of proof. It's going to have to be proved. Now you can write an indictment in which you put a burden on you so that the evidence has to conform to the indictment that you add an element to the crime, which you may well have done with the repeated references to the waters of the United States. But ultimately, that's a matter that the court decides after the proof is in and when the evidence is about to be presented to a jury. Now, obviously, everybody in this case thinks that's the wrong theory. And I'm trying to figure out what am I missing that all of you rescue folks are so brilliant on? I mean, um, you've alleged, uh, that it's a crime of general jurisdiction under the law of the United States. And once you've done that, you've gone ahead and pled the elements of the offense. And it seems to me that that just ends the discussion because after that it becomes, is there a failure of proof or not? Your honor, that's, uh, uh, that was actually the point I was exactly going to make. I agree with you completely. Um, the court should have, as it was looking at the reach of the statute here, it should have looked at the elements of the crime. It should have said, did this, uh, Doug, did the United States have the grand jury return indictment that meets all of the elements of this crime? And if it did, that would be the end of the story here in this pre-trial position. Um, the district court didn't do that though. The district court didn't even analyze, I think very tellingly, it doesn't even analyze what elements of the charged crimes are. So the district court, it skipped over the subject matter jurisdiction question. It said it was asking about the reach of the statutes, but it really wasn't because it didn't do exactly the analysis that you say it should have done. And I agree. Instead of what it did was try to jump to a constitutional question and what I'll call the article one question. Did Congress have the power to enact this statute? And that is not the same question about whether the government sufficiently, uh, charged the case or whether the, uh, elements reached the conduct. Um, Mr. Casey, let me, let me ask you about that because I, um, if you, if you take the, the, the, um, approach that judge Erickson has proposed and the case and the case proceeds, you've got the elements of the offense that there was a captain or someone who committed misconduct and life was lost. And those essentially the three elements that you've, you've asserted need to be proven. So, so what, what, at what point then would the court take a challenge and say, that sure looks like a state crime. What's the jurisdictional connection to federal court? Would that be in an, would that be in the jury instructions? Would that be as a matter of law before trial? This is, or isn't, um, Admiralty table rock. How, how does that work? That would be, uh, as a matter of law. Um, well, it depends actually on what, whether or not the court found that Admiralty was required. The government's position is that it's not good. It's not an So let's assume Admiralty is required. So if, if not at this stage of the proceedings, where in the proceedings would that question then be answered? It'd be a rule 29 motion after the government's evidence, your honor. Um, and so the government, uh, has cases, um, the cases would be a braver or Turner that the court can't, um, decide the motions until it's a motion to dismiss or another motion until it has evidence in front of it. And as judge Harrison said, there's no summary judgment procedure, uh, in a federal criminal case. And so it would be after the evidence was presented at trial. Now, I think let me follow up then on that because is it, do you believe that it's a question of, of law as the district court found whether or not table rock Lake is within the Admiralty jurisdiction of the United States? Is that a question of law? Well, I, your honor, I think that is, again, it becomes a complicated question. Um, it's not an element. And so it's not something that's needed to prove what's needed to prove are the elements, but hold on, hold on. You still have to conform the evidence to the indictment, right? And it's possible to plead something that's not required by the statute and then be compelled to prove it. The best example is that the drug conspiracy statute. If you allege that overt acts had been taken in furtherance of the conspiracy, you must prove one, even though it's not ordinarily an element to the statute. If you just read the statute, right? Well, your honor, I think in here, if you've pled that Admiralty law applies and you know, you could look at this thing and there are references to waters in the United States, that might mean something. It might not mean something, but once you've pled it, that may be something you will be required to prove once you agree. I don't, your honor. I think it's surplusage. Um, oftentimes district courts, uh, uh, will strike surplusage from indictments. Now it's not common in our district because the indictments don't go back to the jury, but, um, there's Supreme court law that if there's a, that the Supreme court is held. And I think it recently, um, and I'm remembering the case was this term recently reasserted that if there's surplus issue in the indictment, it's simply ignored. And so, um, and the government can't increase its elements. Um, and so that's cases, there are cases, again, we cited them in our reply brief that even if the government goes to the jury with extra elements, when this court reviews the sufficiency, it ignores those extra elements. You only, so Mr. Casey, then what does the rule 20 not, what does the motion look like after trial? What's what's the, what's the motion called and how does the judge resolve it? Well, in this case, it would simply be that the government didn't prove the elements that there was an element of the time government didn't prove the evidence for as a matter of law, the council, if the court doesn't have jurisdiction, can it proceed that far? But the court does have jurisdiction, your honor. I mean, that's the whole point. This isn't a civil case. This isn't a case where you're in federal court because of the Admiralty 18 USC, uh, 32, uh, uh, 32, 31. So we're, we're asking a question that's just not relevant here. The court does not need to look at its Admiralty jurisdiction. It's just simply not relevant. What the court looks at are the elements of the crime. And here the elements are very clearly pled and the elements, if the court were to look, your honor, under the rule 29 motion, the court would be looking at, um, did the government prove sufficient evidence for these elements? And is that crime in this case? You, I think the motion that you're talking about would be, um, is that crime, um, under a something that commerce that Congress could criminalize and as applied in this case, in order to win that constitutional challenge, you have to prove that the statute doesn't is unconstitutional as applied, as applied in this case, this is extremely clearly, uh, commercial conduct. Um, I see. I'm going to let me, let me go ahead. Counsel counsel, clearly we've got some procedural issues we're going to have to deal with, but I'd like to ask some questions about the case as it was briefed to us. And, uh, the government's brief says that there are no concerns that the scope of section 1115 would encroach on the general police powers of the state of Missouri. That's the page 39 of the government's brief. Can you tell me where the statute limits its operation to commercial vessels? Absolutely. Your honor. It's in the terms you read the statute as a whole, and we go into this in some detail in our reply brief. So I would, um, um, commend the court to that, but the idea here, in every case that's looked at, it has agreed the Colusa case, the Labreck case. I'd like to specifically where the statute limits its operation to commercial vessels, because I don't see it in the text. I think you're applying a rule of construction to get there, uh, with, with regard to the term owners. We are honored. Um, even the defense, even the appellee's argument applies a rule of construction to the term owners because the term owner sits in the statute by itself. It just says owner. I'm not saying you can't use the rule of construction, but I think you're, you can't say it's in the text because it's just not there. I actually disagree. I think when the text is read as a whole, when the text is read together, as, as, as the court is required to do, um, the limitation is that the vessel in question has to be one such that it has a captain, engineer, pilot, or other employee. So if you read the statute together, it's terms, it has to be a vessel that has a captain, engineer, pilot, or other employee, such vessel, which is what the is used later. That is a vessel that has a captain, pilot, uh, engineer, or other employee is going to have a commercial nature to it because it has, it's employing people, uh, in some type of commerce. And so you're, you are, you are in fact, uh, every court again, that's looked at it has agreed. And I believe that that's just a fair reading of the statute. Okay. Very quickly, I'd like to move to the, to the, uh, navigability question. And the one thing that I'd like to get into very quickly is that the leading case, the controlling case here is Landon Lake Tours. The district court doesn't cite Landon Lake Tours. The appellees in their brief do not cite Landon Lake Tours. Landon Lake Tours says that not only can Congress regulate this type of commercial activity under the commerce clause, that's where a court looks first. A court looks first to the commerce clause. That's what Landon Lake Tours says. And so even if there were a navigability requirement under the statute, which is not in the text of the statute at all, but even if there were, um, it would be navigability, historical navigability under the commerce clause. Landon Lake Tours holds, this sort is, is, has held that Congress can, uh, regulate the type of activity. I mean, Landon Lake Tours in fact involves duck boats. It is the type of activity here. And the government alleges navigability also in that. So if the court found that navigability were required, it would be navigability, uh, under historical navigability under the commerce clause. That's not contested. That Table Rock Lake is historically navigable, is not contested in this case. But lastly, just for, to get to it, the test for the admiralty is, is whether or not the, the, uh, uh, lake is capable of commerce and the lake teems with commerce. And, and I mean, I, if the court, I'm going to get into my rebuttal time, um, but Edwards v. Hurdle cases do not bind this court because the factual record is entirely different. And the fact that the Edwards case is the factual record, while the district court and the appellees act like that is something this court can just take notice of, it's not part of the record here. It was never introduced. These affidavits that were referred to in Edwards are not before this court. The evidence before this court shows the Table Rock Lake teems with commercial activity. Now, much of that commercial activity is of a recreational nature, but this court has held in three buoys that it's, it's opinions are consistent with the Pinnoseth case. The Pinnoseth case is very clear. Even if it's only recreational, recreational is still commercial to the extent Edwards can be read to saying something different. It's based on its facts and those facts aren't before this court. Um, and so counsel, even if we, uh, counsel, even if we accept your interpretation of the statute, that it's limited to commercial vessels under your reading of the statute, it seems to me that Siemens manslaughter would still apply to a chartered fishing boat out on the high plains of Western Nebraska. And is that, uh, is that your position? Well, your honor, I assume that by high plains, you mean there's some water, um, also involved. Let's say, uh, like Lake Bucconahague. I'm not familiar with the lake, your honor. But, um, if it is, you know, if this is a, a, a, a vessel that is, is a commercial in nature, has a captain engineer or other employees, it's a chartered, chartered fishing boat. Well, is there a captain engineer or other employees? Here's the, I know the court asked for hypothetical. The point I'm getting at counsel is that this seems to be an expansion of federal authority into an area of the police powers of the state of Missouri. That's normally within the police powers of the states. And I'm wondering if, uh, do we need to take the 10th amendment into consideration here as we look at this statute? Well, the statute limits itself. Um, under the, uh, the appellees reading the statute is unlimited because they say, well, it has to be navigable waters. Well, they would allow for any non-commercial vessel. The statute limits itself to commercial vessels, your honor. And that why hypotheticals are tough. I'm not trying to avoid the hypothetical. I think my answer is yes, but why hypotheticals are tough is because you need to flesh out the facts and the facts have to be, is this the type of boat that is engaged in the type of commercial activity that would fit under this statute? And that's typically going to happen for big boats on big waters. Um, and so I don't exactly know the chartered fishing, but I don't think, you know, if you're renting the boat and taking it out by yourself, no, if you're going out with a captain onto a significant boat and paying significant money, then it might. But in this case, we are so far in the heartland of the statute that I don't think the concern about the next case really is there. And with regard to- But Mr. Casey, Mr. Casey, doesn't Judge Graza's question sort of loop back to my concern about, in each individual case, you've got to have some kind of jurisdictional hook for, for federal jurisdiction. I mean, that was the case, that was Lopez, right? There was no, there was nothing to link that particular possession of that particular gun with interstate commerce. And it seems to me that Judge Graza's hypothetical sort of pushes you, but you're saying that's the next case. Well, how do you distinguish them? What, who, how do you do it? Because you look at it, you have to show the statute doesn't apply as applied. In this case, the facts really matter. And Your Honor, that's why it's hard to answer the hypothetical, is because the facts matter. And here, there's no doubt this was a commercial enterprise. In fact, it's the exact kind of commercial enterprise this court said Congress could regulate in Landon Lake Tours. It was duck boats. And so it really is pushing it further. You still have to understand, are you going to meet the elements of the statute? And this case doesn't present that question at all. It falls within the heartland of the statute. And Table Rock Lake is within the admiralty jurisdiction. I do want to make this point very quickly, that the government's not backing away from that. It's only that the questions that this court has about procedure, and that this court had about procedure, is because they're the wrong question. This court should stick with its normal analysis, look at the elements, see if the elements were alleged, and then let go to the jury, and let it go to the jury whether or not the government can prove those elements. And no one's contending that admiralty is an element of this. Now, I'm going to take a minute for a rebuttal, your honors, unless there's any questions. That would be fine. Mr. Hobbs. Good afternoon. May it please the court. Federal criminal jurisdiction is limited because there is no congressional, general police, or law enforcement power. Congress has no general plenary authority. The government's arguments attempt to expand federal criminal authority of 1115 and 2302 beyond general admiralty jurisdiction. First, admiralty was the sole basis of jurisdiction charged by the government in each of the three indictments, and both the magistrate court and district court dismissed on that basis. Parallel to these indictments, the government moved to intervene in related civil cases, arguing that Table Rock Lake was subject to admiralty jurisdiction, and the court determined that it was not. Second, Congress enacted the statutes under admiralty jurisdiction. The history of the enactments, the history and context and certain words within the statute indicate that. Third, the Eighth Circuit has determined in admiralty law means that there are waters concerned almost exclusively with the special needs of the shipping industry. Admiralty is lended to waters showing a present capability to sustain commercial shipping. This is the Livingston Standard, the Three Buoys Standard. In Edwards, they held Table Rock Lake is primarily recreational. It's so insignificant, it doesn't change the primary use of the lake. Consistent with the Supreme Court case of Sisson v. Ruby, that the purpose of admiralty jurisdiction is for that commercial shipping. That's the heart of it. Well, you know, that's an interesting argument. The White River had steamboats on it from the mid-1850s to the 1890s. The lake crosses state lines. The Motor Boat Act has been found by the Ninth Circuit to be a commerce power enactment, if you look at the legislative history. This river was navigable, in fact, and there's commercial activity going on in it. The question, I think, at this point is, is it only historically navigable, right? I mean, but there seems to be stuff going on crossing interstate lines, and that there seems to be commerce going on. There seems to be a 32-31 allegation here, and it seems to be a basic jurisdictional element. I mean, why isn't this, at this point, really a fact question for a jury? Or at least, doesn't the government get an opportunity to put the evidence in, and you have the Rule 29 motion brought? Judge, this is not a constitutional challenge. And so 32-31 doesn't satisfy the question. The statutes simply do not reach the conduct. It's outside general admiralty jurisdiction. Under Rule 12, one can bring a time, which is exactly what happened. 32-31 is broken into two parts. There's judicial jurisdiction, the power of the court to rule, and then there's legislative or prescriptive jurisdiction, and that's what's discussed in Prado, in the Eighth Circuit case, in Springer, and it talks about the reach of the statute. We're not alleging that the statute is unconstitutional, and all of the facts that the government won in eight of their arguments, Exhibits 1 through 35, Defensive Exhibits A through M, not a single witness was denied on this point, and Rule 12 would suggest that if there's an issue capable of determination at any point, such as before the jury trial, their wealth and their rights, particularly when the government doesn't deny that all of its text and historical context of the statute, it doesn't include the word admiralty, but nor does it include the word interstate commerce, but what it does include is captain, steamboat, vessel. It's called misconduct of ship officers. Congress intended 11-15 to reach violations occurring anywhere within the general admiralty maritime jurisdiction, and the other statutes, 46-2301 and 2302, were addressing vessels operating on water subject to the jurisdiction of the United States, and like the Motor Boat Act from which it evolved, the cases suggest that statute is grounded in admiralty, and by no stretch of the imagination is it grounded in commerce. That case is Godinez versus Jones, as well as United States versus Ross of the Eastern District, Missouri. Mr. Hobbs, what about some of the really early cases, both the Supreme Court and some of the circuit cases, that really do seem to refer to Congress's authority under the Commerce Clause to regulate ships and regulate this kind of conduct. They also talk about it being on navigable water. I mean, I think it's those cases were on navigable water, but they do reference the Commerce Clause. All of the cases you're talking about, Judge, Hohatzer, LaGroote, Combs, they all occurred on navigable waters, in fact. The Chesapeake Bay, the Great Lakes, Newark Bay, that's one fact. Additionally, the Commerce Clause in its early stages was not nearly what it's become to be. In 1824, in Givens versus Ogden, the Supreme Court struck down a New York statute that was effectively trying to give a monopoly to Robert Fulton and the steamboats, but they did not do it on the broad enactment of federal commerce power as it's now known. A similar case five years later called Wilson versus Black Creek Marsh in 1829, Judge Marshall did not use the commerce power to knock down another state statute. Now, the evolution of the Commerce Authority is interesting. Between 1838 and 1950, every law created by Congress that had an interstate commerce suggestion, there was a hook in the statute. It was stated, examples of the 1915 Larceny Act, the 1934 National Soil and Property Act, the 1932 Federal Kidnapping Act, and only in the late 60s, early 70s, did Congress begin enacting statutes on a commerce hook without expressing that. Two examples of the Consumer Protection Act and the Controlled Substances Act that is in the race opinion that invalidated the California statute. But importantly, in those cases, there was a foundation in the legislative record that they're using interstate commerce as a judicial hook, or jurisdictional hook. That's not what happened in 1838. Council, let me ask you a question about that. I believe the government would argue that it really doesn't matter under what power Section 1115 was enacted because Congress today could enact it under its Commerce Clause power. How would you respond to that? Well, first, Judge, the issue is what did this statute get enacted under and what were its powers at the time? And as the case was discussed in allied tone, the only case that discusses the entire history of the statute, it shows even when the case was changed, the words were never changed. Simply the placement within the category of statutes was changed. But when one looks at a reenacted statute, there's a case out of the Supreme Court that indicates that Wisconsin versus United States at 138 Supreme Court that says you still go back to the original intent of the enactment. And when one goes back to the original intent of the enactment and sees how Section 1115 has been applied, it only applies to waters that are navigable in fact. And that's what this court determined. Now, the government argues Land O'Lake. Land O'Lake is a regulation case. No one's suggesting that Commerce Authority might not exist to allow regulation. That's what Land O'Lake says. The case at bar did not involve the District Court's Article III admiral jurisdiction, but instead Congress's Article I power to regulate. And that's what Judge Rush discussed at the magistrate hearing, what Judge Hartful adopted, and what we've urged in the briefs. The fact is that in the Eighth Circuit law, this case, this waterway has been determined not to be navigable in fact. That's been affirmed in three buoys in Edwards I, took judicial notice, affidavits are given to the district judge in Edwards II, reaffirmed it, and the Livingston Standard requires navigability in fact. One looks at the waterway. So the problem in your example raises the issue. This statute should not be applied beyond admiralty. But under the government's construct, it allows for a wide expansion of federal authority where it need not go. And that's why we believe that the court was well within its rights to sustain the motion. The underpinning persuasive overview of the underpinnings of the statute is set out in Allied Towing, which is that only case that analyzes the jurisdictional reach of 115. And it goes through the history of the statute. But each time the admiralty underpins. There was some discussion at one point as well as it's subject to only section 7 maritime, that is territorial waters, the Great Lakes. But Allied looked at that and said no, it goes beyond that. But when they used the word general application, they meant general admiralty application. And waters must be navigable in fact. And on both the law, legal standard is in AFL-E's favor. And the factual standard that was viewed after a lengthy hearing, all facts were reduced, shows that the character of the lake has not changed. Now, that takes us then to other statutes. 1115, for example, is similar to what we saw as the COGSA Act, the Carriage of Sea Goods Act case. Again, a statute grounded in admiralty. But it is called Jones v. Capagni and Alimentos has said just that. It's a statute grounded in admiralty because you look at the context of the statute and how it's applied. Well, the government criticizes that. But they cite a different statute. They cite the Admiralty Extension Act language. We're talking about the COGSA Act language. I think that analysis is very helpful. Commercial shipping is not an offhand reference. The government argues susceptibility for any commercial activity allows for the statute to be applied. But that's not what the Eighth Circuit says, and that's not what the facts suggest as well. Navigability, in fact, has also been touched upon as far back as 1906 by the Eighth Circuit in the Harris v. Fyke case, when they talk about public highways. There's a Lockheed case out of 2005 that says commercial but recreational activities do not establish navigability but must be physically capable of supporting commercial shipping. All of those cases, when looked at in detail, would suggest that the court was well within its rights to deny a government's position. Now, turning to the legislative and prescriptive jurisdictional point, judicial jurisdiction to adjudicate under 3231 does not give the government complete jurisdiction because one must look at legislative jurisdiction or jurisdiction to prescribe. The Prado case, which was the Maritime Drug Law Enforcement Act case, reversed guilty pleas because the GO-FAST boats operating in international waters were held not to be subject to the prescriptive jurisdiction of the United States. The case of the Eighth Circuit that I mentioned, United States v. Springer, also goes to that point, as well as United States v. Reeser. The words of a statute must be read in the context and with a view of the overall statutory scheme. That point is referenced by Food and Drug Administration v. Brown, and as Judge Kelly noted in Lopez, the Constitution's enumeration of powers does not presuppose something not enumerated. So, those are important points that we'd like to have you understand as you analyze this. Further, the factual record that was made is included in the materials before the court, and it has all of the exhibits that go to that point. Another issue in this case that the government neglects is they criticize the court for taking up admiralty jurisdiction, but it's the government that alleged that was the sole basis of jurisdiction three times, and had one waited till Rule 29, you'd have all of the experience of the other say, well, it's not an element of the case. It's not a proper Rule 29 motion. You waive that by not raising it in advance. So, when we raise something in advance, and not a single piece of evidence is denied or proffered evidence by either side, then they say, well, you're trying to get summary judgment. No, we're trying to use Rule 12. It's intended to be used when an issue is capable of being determined on the law and the facts at any time, such as before a very costly trial, that's what it should be. This is a case in which the government attempts to expand its jurisdiction far beyond what the intent of the statute is to be. I think that's clear when one looks at the admiralty cases and looks at how commerce has evolved over time. Now, in addition, I think it's important to point out that in the materials, we also cite the propeller genocide case, which is a case of 1851 from the United States Supreme Court, in which there's an 1845 statute, and a plaintiff running a vote called Cuba got in a admiralty. And there's discussion by Roger Taney and the majority opinion that to expand it to Article 1, Section 8 commerce jurisdiction is unacceptable. That's beyond the measure of the statute. And yet, that's another example of what this government is trying to do in this prosecution. Now, I also think it's important, as we've pointed out, that this, when we suggest that this could be a state matter, that that's exactly what has happened. And we pointed that out with the 28-J letter. There's also a constructive amendment issue here. The government alleges jurisdiction is hooked in admiralty solely. Yet, in the reply brief to the motion dismissed, they say, well, 3231 is the sole basis. We shouldn't even be here. But that only goes to the judicial power to rule, not to the reach of the statute. And secondly, they say, well, it's now commerce. But commerce is a whole different situation now that cannot be applied to those enactments that evolved over time. That is a fatal variance, a constructive amendment of indictment. And that's not fair notice to the defendants when they're placed on notice of what the charges are. General admiralty power is distinct from commerce power. And it's also distinct from the statutorily defined special maritime territorial jurisdiction under Title 18 United States Code, Section 7. That special maritime is narrower than the general federal admiralty jurisdiction, as it does not include navigable waters within the federal admiralty jurisdiction that are also within the territorial jurisdiction of a particular state. That's why the old case Hoop and Garner that's referenced in the Allied towing case didn't answer it. Only Allied towing looked at it and said, no, it goes to all general admiralty power. General application means general admiralty power. The Constitution grants general admiralty power over criminal and civil matters because Article 3, Section 2 and Article 1 within the necessary and proper clause grant that authority. And that's the case of Kaiser Etna. That, by the way, is the leading case that the government would suggest goes against the appellee's position. But Kaiser Etna, again, was a regulatory Fifth Amendment property rights case. Talking about the use of a commerce hook in that context, that's not what we have here. If there's any need for a criminal resolution, it should and could be pursued in state court. In short, set forth in Cleveland versus the United States, it stated, we resist the government's reading of the statute because it invites us to approve a sweeping expansion of federal criminal jurisdiction in the absence of a clear statement by Congress. Admiralty is consistent with every criminal prosecution ever brought under 1115, if you look at the nabble waters in question. Further, it should be pointed out that we've examined every case on this statute and there's not a statute that was not brought in clearly navigable waters. So we believe the government's alleged Admiralty is capable of being determined on a Rule 12 notion. It doesn't meet Admiralty, both as a matter of law, as a matter of fact, in the 8th Circuit, they're attempting to amend the indictment. And for all those reasons, we ask with all respect that this court affirm the rulings that Magistrate Rush and Judge Hartwell have issued in this case. And I want to thank you for your time. Thank you, Mr. Hobbs. Does Mr. Casey have any rebuttal time? Just almost a minute, Your Honor. All right, Mr. Casey. Your Honor, I'll try not to make this a lightning round, but of course I have a lot to say. The first thing is, with regard to Allied Towing, it didn't answer the question, or the statement that the appellees point to as dicta. It didn't answer the question in this case, and its historical analysis was wrong. We put that out in the brief, but more importantly, the historical analysis really doesn't matter because the statute in question was passed in 1948 as a statute of general applications. You are well within the modern understanding of the Commerce Clause. Congress said it was a statute of general application, so it should be reaching its full elements. Navigability, not in the statute. Amorties, not in the statute. This court would be truly unprecedented in reading that type of restriction into 1015. Now, the misdemeanor statute is Commerce Clause navigable. That's historical waters. We put that in the brief. But it would be unprecedented to read that type of limitation, and no court has ever done something like that. And very quickly, with regard to the navigability of Table Rock Lake, if I just could have one more minute, Your Honor? Please finish. Yes. Yeah, very quickly. The government's position, nonetheless, is if the court does reach the navigability of Table Rock Lake, it is a navigable waterway. It is teeming with commerce. It is an interstate lake. The precedent, any court that's directly addressed the issue has said that is the type of commerce that satisfies the Commerce Clause. And if historical navigability is the standard, or if navigability at all is the standard, this court has to decide, is that now becoming an element? Because what it's not is a question of jurisdiction. This court has jurisdiction. The government does not have to plead jurisdiction in a criminal case. It has it by the nature of the charge. And so when the appellees keep saying that, well, that's how it was pledged, that's how it was pledged, one, both navigability, Commerce Clause, and admiralty were pled, and that's clear from the statements that the government made. And, you know, secondly, I think also, I'm sorry I'm getting twisted up, Your Honor, but it is not the case the government has always said it was admiralty. If you look back, I believe it's in the civil case, Order 142, I believe, it correctly states the government, thanks to statute, is enacted under the Commerce Clause, but out of an abundance of caution is wanting to pursue this admiralty theory as well. So it's always been the government working with uncertainty is trying to bring a federal case, which this very much is for the reasons in our is asking this court to reverse so that we can proceed to trial. Thank you. And thank you to both counsel for your arguments here today and your briefing in this case. It's very interesting and challenging, and we will take the matter under advisement.